UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) CASE NO. 1:14-Cr-121-HMS-WBC |
| DAVORIUS APPLEBERRY | ) |
| | ) |

Report and Recommendation

I. Introduction

Defendant Davorius Appleberry has moved to suppress all evidence recovered on November 13, 2013, from a silver SUV he was driving [Doc. 25]. Defendant asserts that, pursuant to *Arizona v. Gant*, 556 U.S. 332, 338 (2009), police lacked a constitutional basis to perform a warrantless search of the vehicle and all evidence recovered must be suppressed. The government asserts that it had probable cause to believe the vehicle contained evidence of a convenience store robbery which had occurred a few minutes earlier, and thus the search was constitutionally permissible. The undersigned agrees, for the reasons set forth herein, that probable cause existed to search the vehicle, and it is therefore RECOMMENDED that defendant's motion to suppress be DENIED.

II. Facts

An evidentiary hearing was held before the undersigned Magistrate Judge on defendant's motion to suppress on Thursday, July 9, 2015. Two witnesses testified: Officer Charles Brock and Officer David Campbell, both of the Chattanooga Police Department (CPD).

In the early morning hours of November 13, 2013, at approximately 3 am, dispatch sent a call to Officers Brock and Campbell, who were traveling in separate patrol units, that there had just been an armed robbery at the Kangaroo gas station (Kangaroo) on Hixson Pike. The

1

dispatcher reported the suspect was a short black male wearing a black hoodie pulled up over his head and a bandanna over his face. The dispatcher further reported the suspect had fled on foot in an unknown direction. Campbell proceeded to the Kangaroo and Brock proceeded to an apartment complex across Hixson Pike from the Kangaroo.

The apartment complex was set back several hundred yards from Hixson Pike behind a row of businesses which line Hixson Pike across from the Kangaroo. Brock testified he went to the apartment complex because he knew the suspect could not have fled inside a business since they were closed, it was likely that the suspect would return home or to a friend's apartment, the apartments were close by, and police had been dispatched frequently to those particular apartments.

As Brock drove up the driveway to the apartment complex he saw, coming from the opposite direction, a vehicle without lights on proceeding into the apartment complex's parking lot. Brock testified that driving without lights on in the dark is a traffic violation. The vehicle pulled into a parking space and stopped. Brock continued up the apartment complex's drive and stopped his patrol car in the driveway behind the parked vehicle, a silver SUV. Two men exited the vehicle, a tall man from the passenger side and a shorter, shirtless black man from the driver's side wearing sweat pants over jeans. Brock exited his patrol car and asked them what was going on. The driver was in an excited state and said he had just been "jumped" by some people. He pointed in one direction and stated, "there they go!" When Brock turned to look, the driver, later identified as the defendant in this case, bolted in the opposite direction toward the apartment complex.

The apartment complex is about three stories high and divided into sections by stairwells. With Brock chasing him, defendant ran up one stairwell and out the complex to the other side

2

where he ran through the grass to another stairwell. Defendant attempted to enter an apartment at the end of a staircase but the door was locked. With Brock right behind him, defendant was trapped at the bottom of the stairwell. During the chase, Brock had continued to order the defendant to stop. The defendant had a bulge in his pocket, and Brock was concerned for his safety. He ordered defendant to stop again, but defendant came toward him reaching for his pocket. Brock tazed the defendant who fell to the ground. Even while on the ground, however, defendant continued to reach for his pocket, and Brock tazed him again several times. By this time, other officers arrived to assist and handcuff the defendant. Brock testified defendant was under arrest for making a false report (that he had been "jumped") and evading a lawful detention. Brock searched defendant's pocket and found a bandanna and gloves. He then walked the defendant back to the parking lot where the defendant was secured in a patrol car.

Officer David Campbell was in the parking lot when Brock arrived with the defendant. When police dispatch had first notified the patrol units of the robbery at the Kangaroo, Campbell had gone immediately to the Kangaroo where the clerk gave him more information about the incident. The clerk stated the store was held up at gunpoint by a man in dark pants wearing a black hoodie over his head, gloves, and a bandana covering his nose and mouth. He demanded cash from the register and cigarettes which he put in a backpack and fled on foot. After receiving this information from the clerk, Campbell drove to the apartment complex because he heard on the police radio that other officers were involved in a footchase there with the suspect.

When Brock reached the apartment complex parking lot with the defendant, Brock spoke to Campbell. Brock identified for Campbell the SUV which defendant had been driving and the defendant himself. Brock told Campbell about defendant's behavior when Brock arrived and that Brock had found a bandana and gloves in defendant's pocket. Using a flashlight, Campbell

3

looked through the closed front passenger side window of the SUV and saw a black hoodie and a "bookbag." Campbell then looked through the closed driver's window and saw the butt of a gun wedged in between the console and driver's seat. Campbell then searched the SUV retrieving the gun, hoodie, and backpack. Campbell found loose cash and cigarettes in the backpack. This evidence, as well as the defendant, were turned over to investigators assigned to the Kangaroo robbery. The passenger who had been in the SUV with the defendant when Brock first arrived at the apartment complex was never found.

### III. Analysis

The defendant does not challenge his seizure by police on November 13, 2013. His sole challenge in his motion to suppress is the search of the silver SUV he had been driving. Defendant argues that because he was arrested for evading arrest on November 13, 2013, his vehicle could only have been searched incident to arrest if it were reasonable for the officers to believe that evidence of his resisting arrest might be found in the SUV. And, continues the argument, it was not reasonable to believe evidence of resisting arrest would be found in the SUV, thus, under *Arizona v. Gant*, 556 U.S. 332, 338 (2009), Officer Campbell's search of the SUV was unconstitutional.

It is settled law that warrantless searches are *per* se unreasonable under the Fourth Amendment "subject to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009). A search incident to arrest is one of these exceptions. *Id.* *Gant* addresses circumstances under which a vehicle may be searched incident to arrest. *Gant* expanded the search incident to arrest doctrine articulated by the Supreme Court in *Chimel v. California*, 396 U.S. 752 (1981) and *York v. Belton*, 453 U.S. 454 (1981). Pursuant to *Chimel* and *Belton*, police may search without a warrant those portions of a vehicle immediately

4

accessible by a person following his arrest "from which he might be able to gain possession of a weapon or destructible evidence." *Gant*, 556 U.S. at 335. In *Gant,* the Supreme Court held that "circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle." *Id.*

Defendant is correct that it was not reasonable to believe evidence of defendant's evading arrest would be found in the silver SUV. However, the SUV was not searched incident to arrest. Rather, it was searched pursuant to the automobile exception to the warrant requirement and concomitantly, *Arizona v. Gant*, 556 U.S. 332 (2009) is inapplicable to this case.

"Under the automobile exception to the warrant requirement, 'an officer may search a readily mobile vehicle without a warrant if he has probable cause to believe that the vehicle contains evidence of a crime.'" *United States v. Johnson*, 707 F.3d 655, 658 (6th Cir. 2013) (quoting *United States v. Redmond*, Nos. 10–5636, 10–5644, 2012 WL 1237787, at *4 (6th Cir. Apr. 13, 2012)). *See also, Carroll v. United States,* 267 U.S. 132, 149 (1925) ("[I]f the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid"). "Probable cause exists when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003) (quoting *United States v. Davidson,* 936 F.2d 856, 859 (6th Cir.1991)).

In *United States v. Galaviz*, 645 F.3d 347, 355 (6th Cir. 2011), the Sixth Circuit elaborated on the mobility factor of the automobile exception to the warrant requirement:

> … The automobile exception allows officers to search a vehicle without a warrant if they have "probable cause to believe that the vehicle contains evidence of a

5

crime." *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007) (citation omitted). This exception has traditionally been based on the " 'ready mobility' of the automobile, which created 'an exigency sufficient to excuse failure to obtain a search warrant.' " *Id.* (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996) and *California v. Carney*, 471 U.S. 386, 390–91, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985)). Recent cases have clarified that the automobile exception need not rest on an independent showing of exigency, because "[e]ven in cases where an automobile was not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justified application of the vehicular exception." *Id.* (quoting *Carney*, 471 U.S. at 391, 105 S.Ct. 2066).

At the time that Campbell decided to open the SUV and search it, he had the following information: the Kangaroo near the apartment complex had been robbed only a few minutes earlier at gunpoint by a black man wearing dark pants, a black hoodie pulled over his head, gloves, and a bandana over his mouth and nose. The suspect had put cash and cigarettes in a back pack and fled on foot. Brock had driven directly to the nearby apartment complex where he saw an SUV coming toward him without lights. When the SUV parked, Brock spoke to the driver who was shirtless and wearing dark jeans under sweat pants. The driver, the defendant in this case, tried to run away by distracting Brock with a story of being "jumped" and pointing in the opposite direction from which he ran. When Brock caught the defendant, he had a bandana and gloves in his pocket. The defendant had been driving the silver SUV, and Campbell could see in plain view a black hoodie, a back pack, and the butt of a gun in the SUV. [1]

---

[1] "Under the plain-view doctrine, 'if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant.'" *United States v. Galaviz,* 645 F.3d 347, 355 (6th Cir. 2011) (quoting United *States v. Herndon,* 501 F.3d 683, 692 (6th Cir. 2007)). Campbell was in the open parking lot of the complex. There were no gates preventing access to the parking lot and no "No Trespassing" signs. There is no contention by the defendant that the police could not lawfully be in the parking lot. *See, also United States v. Diaz*, 25 F.3d 392, 396 (6th Cir. 1994) (holding that while a motel guest "may have had an expectation of privacy in his motel room and (albeit less so) in his car, that expectation d[oes] not extend to the lot, which the officers could

6

The evidence, recited above, leads to a strong deduction that the defendant was the suspect in the Kangaroo robbery and that the black hoodie, the back pack, and the gun visible in the SUV through the closed window were items used in the robbery. The defendant matched the physical description of the suspect in the robbery. He was found close to the Kangaroo only minutes after the robbery. His behavior, driving without lights on and attempting to run away, was very suspicious. The fact that he was not wearing a shirt in November was also suspicious since a suspect may try to discard clothing that could be identified from the robbery. The bandana, gloves, gun, hoodie, and back pack were consistent with the items used by the suspect in the robbery and their incriminating character was immediately apparent. In sum, considering the totality of the circumstances, Campbell had ample probable cause to believe evidence of the Kangaroo robbery would be found in the SUV and, pursuant to the automobile exception, he could lawfully search it without a warrant.

---

lawfully enter.") Furthermore, "a motorist has 'no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers.' " *Galaviz,* 645 F.3d at 355 (quoting *United States v. Campbell,* 549 F.3d 364, 373 (6th Cir.2008)). Thus, Campbell was lawfully in a position to see the gun, hoodie and back pack in the SUV.

## IV. Conclusion

Because the police had probable cause to search the vehicle at issue in this case, there is no basis to suppress the evidence found in it. Therefore, it is RECOMMENDED[2] this motion to suppress be DENIED.

S/*William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE

---

[2]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).