UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | Case No. 1:14-cr-121 |
| v. | ) | |
| | ) | Judge Mattice |
| DAVORIUS APPLEBERRY, | ) | Magistrate Judge Steger |
| | ) | |
| | ) | |
| | ) | |

### ORDER

On July 20, 2015, United States Magistrate Judge William B. Carter filed his Report and Recommendation (Doc. 33) pursuant to 28 U.S.C. § 636(b)(1). In his Report and Recommendation, Magistrate Judge Carter recommended that Defendant's Motion to Suppress (Doc. 25) be denied. On August 4, 2015, Defendant filed timely objections to the Report and Recommendation. (Doc. 36).

The Court has now reviewed the entire record relevant to the instant objections, and for the reasons described below, the Court will **ACCEPT and ADOPT** Magistrate Judge Carter's Report and Recommendation and will **DENY** Defendant's Motion to Suppress.

### I. BACKGROUND

The Parties have not objected to the Magistrate Judge's recitation of the facts, and the Court concludes that it is accurate. The pertinent facts as summarized by Magistrate Judge Carter are as follows:

> An evidentiary hearing was held before the . . . Magistrate Judge on defendant's motion to suppress on Thursday, July 9, 2015. Two witnesses testified: Officer Charles Brock and Officer David Campbell, both of the Chattanooga Police Department (CPD).

In the early morning hours of November 13, 2013, at approximately 3 am, dispatch sent a call to Officers Brock and Campbell, who were traveling in separate patrol units, that there had just been an armed robbery at the Kangaroo gas station (Kangaroo) on Hixson Pike. The dispatcher reported the suspect was a short black male wearing a black hoodie pulled up over his head and a bandanna over his face. The dispatcher further reported the suspect had fled on foot in an unknown direction. Campbell proceeded to the Kangaroo and Brock proceeded to an apartment complex across Hixson Pike from the Kangaroo.

The apartment complex was set back several hundred yards from Hixson Pike behind a row of businesses which line Hixson Pike across from the Kangaroo. Brock testified he went to the apartment complex because he knew the suspect could not have fled inside a business since they were closed, it was likely that the suspect would return home or to a friend's apartment, the apartments were close by, and police had been dispatched frequently to those particular apartments.

As Brock drove up the driveway to the apartment complex he saw, coming from the opposite direction, a vehicle without lights on proceeding into the apartment complex's parking lot. Brock testified that driving without lights on in the dark is a traffic violation. The vehicle pulled into a parking space and stopped. Brock continued up the apartment complex's drive and stopped his patrol car in the driveway behind the parked vehicle, a silver SUV. Two men exited the vehicle, a tall man from the passenger side and a shorter, shirtless black man from the driver's side wearing sweat pants over jeans. Brock exited his patrol car and asked them what was going on. The driver was in an excited state and said he had just been 'jumped' by some people. He pointed in one direction and stated, 'there they go!' When Brock turned to look, the driver, later identified as the defendant in this case, bolted in the opposite direction toward the apartment complex.

The apartment complex is about three stories high and divided into sections by stairwells. With Brock chasing him, defendant ran up one stairwell and out the complex to the other side where he ran through the grass to another stairwell. Defendant attempted to enter an apartment at the end of a staircase but the door was locked. With Brock right behind him, defendant was trapped at the bottom of the stairwell. During the chase, Brock had continued to order the defendant to stop. The defendant had a bulge in his pocket, and Brock was concerned for his safety. He ordered defendant to stop again, but defendant came toward him reaching for his pocket. Brock tazed the defendant who fell to the ground. Even while on the ground, however, defendant continued to reach for his pocket, and Brock tazed him again several times. By this time, other officers arrived to assist and handcuff the defendant. Brock testified defendant was under arrest for making a false report (that he had been "jumped") and evading a lawful detention. Brock searched defendant's

2

pocket and found a bandanna and gloves. He then walked the defendant back to the parking lot where the defendant was secured in a patrol car.

Officer David Campbell was in the parking lot when Brock arrived with the defendant. When police dispatch had first notified the patrol units of the robbery at the Kangaroo, Campbell had gone immediately to the Kangaroo where the clerk gave him more information about the incident. The clerk stated the store was held up at gunpoint by a man in dark pants wearing a black hoodie over his head, gloves, and a bandana covering his nose and mouth. He demanded cash from the register and cigarettes which he put in a backpack and fled on foot. After receiving this information from the clerk, Campbell drove to the apartment complex because he heard on the police radio that other officers were involved in a footchase there with the suspect.

When Brock reached the apartment complex parking lot with the defendant, Brock spoke to Campbell. Brock identified for Campbell the SUV which defendant had been driving and the defendant himself. Brock told Campbell about defendant's behavior when Brock arrived and that Brock had found a bandana and gloves in defendant's pocket. Using a flashlight, Campbell looked through the closed front passenger side window of the SUV and saw a black hoodie and a "bookbag." Campbell then looked through the closed driver's window and saw the butt of a gun wedged in between the console and driver's seat. Campbell then searched the SUV retrieving the gun, hoodie, and backpack. Campbell found loose cash and cigarettes in the backpack. This evidence, as well as the defendant, were turned over to investigators assigned to the Kangaroo robbery. The passenger who had been in the SUV with the defendant when Brock first arrived at the apartment complex was never found.

(Doc. 33 at 1–4).

On June 1, 2015, Defendant filed the instant Motion to Suppress (Doc. 25), which was referred to Magistrate Judge Carter for a Report and Recommendation. (Doc. 27).

## II. ANALYSIS

Defendant objects to Magistrate Judge Carter's Report and Recommendation on two grounds. First, Defendant argues that Judge Carter did not properly consider how *Arizona v. Gant*, 556 U.S. 332 (2009), changed how law enforcement must handle a vehicle search incident to arrest. (Doc. 36 at 1). Second, that the vehicle in question was not "readily mobile" so the automobile exception to the Fourth Amendment's search

3

warrant requirement does not apply. (*Id.* at 3). The Court will address each argument in turn.

### A. Applicability of *Arizona v. Gant*

Defendant argues, as he did in his original Motion to Suppress, (*see* Doc. 25 at 1–3), that the search of his vehicle does not comport with the search incident to a lawful arrest exception to the Fourth Amendment search warrant requirement, as outlined in *Gant*. In this instance, Defendant is correct; however, the Government has not relied on this exception, and Defendant's insistence that the procedures described in *Gant* override secondary exceptions to the Fourth Amendment search warrant requirement is misplaced.

In *Gant*, the Supreme Court of the United States determined that law enforcement officials may search a vehicle incident to a lawful arrest "only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." 556 U.S. at 351. Because Defendant was secured in a patrol car at the time of the search, the first justification for a search of the vehicle incident to Defendant's lawful arrest is clearly inapplicable. As to the second justification, there is no indication that any officer even subjectively believed that the vehicle contained evidence of the offenses of arrest, namely making a false report and evading a lawful detention. Had the Government relied solely on the search incident to a lawful arrest exception to the Fourth Amendment's search warrant requirement, Defendant's arguments would be well-taken. The Government, however, relies on the automobile exception to justify the search of Defendant's vehicle. To the extent Defendant argues that the procedural safeguards in

4

*Gant* operate to nullify a second, independent exception to the Fourth Amendment's search warrant requirement, Defendant's objection will be **OVERRULED**.

### B. The Automobile Exception

Second, Defendant argues that the automobile exception to the Fourth Amendment's search warrant requirement does not apply because Defendant's vehicle was not "readily mobile" as it was blocked in by a police car and there were several police officers present after Defendant's arrest. (Doc. 36 at 3).

"Under the automobile exception, police officers may conduct a warrantless search of a vehicle if they have probable cause to believe that the vehicle contains evidence of a crime." *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007) (internal quotation marks omitted). The initial rationale for this exception was that vehicles are readily mobile, which creates the exigency necessary to justify waiving the warrant requirement. *See, e.g.*, *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973). The Supreme Court went on, however, to clarify that a vehicle needn't be immediately mobile for the automobile exception to apply. *California v. Carney*, 471 U.S. 386, 391 (1985) ("Even in cases where an automobile was not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justified application of the vehicular exception."). Moreover, the United States Court of Appeals for the Sixth Circuit has even held the automobile exception applicable where "officers were in control of both the keys to the vehicle and the operator of the vehicle." *Smith*, 510 F.3d at 650 (citing *United States v. Graham*, 275 F.3d 490, 507–11 (6th Cir. 2001)). The Court thus finds that the presence of multiple police officers and the fact that the vehicle was blocked in by a police car do not render the automobile exception inapplicable in this case. Accordingly, Defendant's objection will be **OVERRULED**.

Defendant has not directly objected to Magistrate Judge Carter's conclusion that the police had probable cause to search Defendant's vehicle. The Court, however, has reviewed the evidentiary record and agrees with Magistrate Judge Carter's well-reasoned conclusions. As stated in Magistrate Judge Carter's Report and Recommendation, at the time of the search, the police had the following information:

> the Kangaroo near the apartment complex had been robbed only a few minutes earlier at gunpoint by a black man wearing dark pants, a black hoodie pulled over his head, gloves, and a bandana over his mouth and nose. The suspect had put cash and cigarettes in a back pack and fled on foot. Brock had driven directly to the nearby apartment complex where he saw an SUV coming toward him without lights. When the SUV parked, Brock spoke to the driver who was shirtless and wearing dark jeans under sweat pants. The driver, the defendant in this case, tried to run away by distracting Brock with a story of being 'jumped' and pointing in the opposite direction from which he ran. When Brock caught the defendant, he had a bandana and gloves in his pocket. The defendant had been driving the silver SUV, and Campbell could see in plain view a black hoodie, a back pack, and the butt of a gun in the SUV.

(Doc. 33 at 6). The Court finds, as a matter of law, that this information gave police probable cause to search the vehicle without a warrant pursuant to the automobile exception to the Fourth Amendment's search warrant requirement.

## III. CONCLUSION

For the reasons stated herein, Defendant's objections are hereby **OVERRULED**, Magistrate Judge Carter's Report and Recommendation (Doc. 33) is hereby **ACCEPTED and ADOPTED**, and Defendant's Motion to Suppress (Doc. 25) is hereby **DENIED**.

**SO ORDERED** this 13th day of October, 2015.

                                    */s/ Harry S. Mattice, Jr.*
                                    HARRY S. MATTICE, JR.
                                    UNITED STATES DISTRICT JUDGE